UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| PATRICK LAGANIERE,<br>Trustee for the heirs and next of kin of<br>Cody Patrick Laganiere, decedent,<br><br>          Plaintiff,<br><br>v.<br><br>THE COUNTY OF OLMSTED; OLMSTED<br>COUNTY ADULT DETENTION CENTER;<br>DR. MOLELLA; MARY MAUSETH; and<br>STACY SINNER,<br><br>          Defendants. | Case No. 12-CV-1205 (PJS/JSM)<br><br><br><br><br>ORDER |

---

Michael A. Bryant, BRADSHAW & BRYANT PLLC, for plaintiff.

Gregory J. Griffiths and Hilary R. Stonelake-Curtis, DUNLAP & SEEGER, P.A., for defendants County of Olmsted, Olmsted County Adult Detention Center, Mary Mauseth, and Stacy Sinner.

Cody Laganiere ("Laganiere") died while in custody at the Olmsted County Adult Detention Center ("ADC") on September 24, 2010. Laganiere's father, plaintiff Patrick Laganiere, brings this action under 42 U.S.C. § 1983 against the County of Olmsted ("County"), the ADC, and County employees Stacy Sinner and Mary Mauseth, alleging that they failed to provide Laganiere with adequate medical care.[1]

This matter is before the Court on defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is granted.

---

[1] The Court earlier granted summary judgment to defendant Dr. Robin Molella. ECF No. 44.

I.  BACKGROUND

At the outset, the Court must acknowledge that the record before it is unusually sparse. Typically a summary-judgment motion is decided on a full record, developed by the parties through discovery. But plaintiff's counsel inexplicably did not take *any* discovery from *any* defendant — despite the fact that plaintiff bears the burden of proof and has no personal knowledge of the events that led to his son's death. Defendants, too, chose to take no discovery, but their decision was at least understandable, given that defendants do not bear the burden of proof and do have personal knowledge of the events of September 24, 2010. As a result of the parties' failure to engage in discovery, the record before the Court consists of little more than a handful of short affidavits. Those affidavits establish the following:

Defendant Stacy Sinner is the director of detention services for the County and supervises the ADC. Sinner Aff. ¶ 1. Defendant Mary Mauseth is a detention deputy who was assigned to the housing unit in which Laganiere was incarcerated on September 24, 2010. Mauseth Aff. ¶¶ 1-3. Among other things, detention deputies are required to conduct well-being checks on inmates at least every 30 minutes. Mauseth Aff. ¶ 2. Under ADC policy, a staff member must "[p]ersonally observe each detainee every thirty (30) minutes" and "[b]e satisfied that each detainee seems to be behaving or sleeping normally . . . ." Sinner Aff. ¶ 4 & Ex. A. Each well-being check must be logged, and any abnormal situation must be noted. Sinner Aff. Ex. A.

About a week before his death, Laganiere was prescribed methadone. Sinner Aff. Ex. C [ECF 49-1 at 45]. Justan Hoffman, Laganiere's cellmate at the ADC, noticed that after Laganiere

took methadone he would slur and drool and could barely walk.  Hoffman Aff. ¶ 3.[2]  According to Hoffman, Laganiere "was totally out of it and his behavioral changes were totally noticeable to everyone around him."  Hoffman Aff. ¶ 3.  Hoffman also says that he informed "Defendants" of Laganiere's behavioral changes by "ask[ing] the jail guards to check on him."  Hoffman Aff. ¶ 4.  Hoffman does not identify the guard or guards to whom he spoke.

On September 24, Mauseth began her morning shift at 6:00 a.m.  Sinner Aff. ¶ 9.  Mauseth conducted a head count at 6:50 a.m.  Mauseth Aff. ¶ 3.  Laganiere was not awake during that head count; instead, Mauseth observed him lying on his back in his bunk, snoring.  Mauseth Aff. ¶ 3.  At 7:10 a.m., Mauseth noticed that Laganiere had not come out of his cell for breakfast or to take his morning medication.  Mauseth Aff. ¶ 4.  Mauseth asked Laganiere if he wanted either breakfast or his medication, and he replied, "no, not today."  Mauseth Aff. ¶ 4.  Mauseth continued to perform well-being checks on Laganiere and the other prisoners, and she saw nothing unusual.  Mauseth Aff. ¶ 5.  During a well-being check conducted at 10:10 a.m., she heard Laganiere snoring.  Mauseth Aff. ¶ 6.  At about 10:35 a.m., Mauseth found Laganiere unresponsive in his cell.  Mauseth Aff. ¶¶ 6-7.  Attempts to revive him were unsuccessful, and Laganiere was declared dead.  Mauseth Aff. ¶ 7.  Laganiere's death certificate reports that the immediate cause of his death was methadone toxicity and that other contributing conditions included acute bronchial pneumonia.  Bryant Aff. Ex. A.

Relying entirely on Hoffman's affidavit, plaintiff disputes at least part of Mauseth's account of her activities on the morning of September 24.  Hoffman's affidavit, however, is

---

[2]Hoffman's affidavit is attached as Exhibit C to the August 21, 2013 affidavit of Michael Bryant [ECF No. 53 at 10-12].

internally contradictory and difficult to understand. He asserts that he "did not observe half hour checks" on Laganiere or any other inmate on September 24, but he also asserts that "jail guards may have walked around our cells but they did not do any verbal checks" and that "Mauseth was performing checks on inmates including myself" on September 24.[3] Hoffman Aff. ¶¶ 4-5. Hoffman also recalls that Laganiere was asleep and snoring on the morning of September 24, but says that Laganiere had stopped snoring about 45 minutes before Mauseth checked on him. Hoffman Aff. ¶ 6.

The ADC policy on well-being checks does not require verbal checks, as Hoffman (or the attorney who drafted the affidavit for him) seems to believe. Instead, as described above, the ADC policy merely requires that a staff member "[p]ersonally observe" inmates every 30 minutes and "[b]e satisfied that each detainee seems to be behaving *or sleeping* normally. . . ." Sinner Aff. Ex. A (emphasis added). Thus, Hoffman's affidavit — which acknowledges that "jail guards may have walked around our cells" — does not contradict Mauseth's assertion that she performed periodic well-being checks.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[3]Hoffman also asserts that Laganiere went to breakfast "shortly before he died . . . ." Hoffman Aff. ¶ 3. Although this seems to contradict Mauseth's assertion that Laganiere did not go to breakfast on September 24, plaintiff interprets Hoffman's statement to refer to a different day. ECF No. 52 at 3 (plaintiff's memorandum describing Laganiere's behavior at breakfast "[a] few days prior to his death"). The parties thus agree that Laganiere remained in bed and did not leave his cell on the morning of September 24.

Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

### B.  Section 1983 Claims

The essential elements of a § 1983 claim are "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right."  *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001).  Plaintiff contends that defendants violated Laganiere's rights under the Eighth and Fourteenth Amendments by providing inadequate medical care.[4]

To prevail on his claim, plaintiff must prove that defendants were deliberately indifferent to a serious medical need of Laganiere.  *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) ("To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs."); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) ("we hold that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety").  This is a

---

[4]A convicted prisoner's claim that he received inadequate medical care is analyzed under the Eighth Amendment, *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011), while a similar claim by a pretrial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment, *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012).  The record is unclear whether Laganiere was a convicted prisoner or a pretrial detainee.  It does not matter, though, as the Eighth Circuit applies the same substantive standards under both the Eighth and Fourteenth Amendments.  *See id.*

tough standard.  A serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 851 (8th Cir. 2006) (citation and quotations omitted).  In order to prove deliberate indifference to a serious medical need, "[t]he prisoner must show more than negligence, more even than gross negligence . . . ."  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).  Indeed, "[d]eliberate indifference is akin to criminal recklessness . . . ."  *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008).

1.  The County, The ADC, and Stacy Sinner

A municipality cannot be held vicariously liable under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Instead, the plaintiff must prove that the constitutional violation resulted from (1) an official municipal policy; (2) an unofficial municipal custom; or (3) a deliberately indifferent failure by the municipality to train or supervise its employees.  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).

Plaintiff does not identify a municipal policy or custom that caused Laganiere's death.  To the contrary, plaintiff argues that Mauseth should be held liable because she *failed* to follow the ADC policy on well-being checks — and that, if she had followed the policy, Laganiere would not have died.  In short, far from arguing that a policy or custom of defendants resulted in Laganiere's death, plaintiff instead argues that following the ADC policy on well-being checks would have saved Laganiere's life.

Likewise, plaintiff points to no evidence that a failure to train or supervise Mauseth caused her to violate the ADC policy on well-being checks.  There is no evidence that, before Laganiere's death, the County or the ADC were on notice that Mauseth or any other detention

deputy had failed to follow the policy.  *Id.* at 1216-17 (*Monell* liability premised on failure to supervise or train cannot succeed without evidence that the municipality had notice of a pattern of unconstitutional conduct).  Without such evidence, plaintiff cannot prove a deliberately indifferent failure to train or supervise.

Somewhat confusingly, plaintiff relies on the principle that the action of a final policymaking official can establish an official municipal policy.  *See id.* at 1214-15.  He seems to be suggesting that when Mauseth allegedly failed to conduct well-being checks every 30 minutes, she was somehow establishing policy for the County or the ADC.  But Mauseth was merely a detention deputy; plaintiff can point to no evidence that she was the final policymaking official for the County or the ADC with respect to anything.

Plaintiff's § 1983 claim against Sinner in her personal capacity likewise lacks any evidentiary support.  "[A] supervisor who does not directly participate in an employee's constitutional violation can only be liable for the violation when it was caused by the supervisor's failure to train or supervise his or her employees properly."  *Livers v. Schenck*, 700 F.3d 340, 357 (8th Cir. 2012).  But the record contains no evidence regarding the training or supervision that Sinner did or did not provide to the detention deputies.  There is also no evidence that, before Laganiere's death, Sinner knew that any detention deputy had failed to follow the policy — either by failing to conduct well-being checks every 30 minutes or by failing to get medical attention for a prisoner who needed it.  And there is no evidence that Sinner was even present at the ADC on September 24.

Because the record contains no evidence that would permit a jury to hold the County, the ADC, or Sinner liable for Laganiere's death, their motion for summary judgment is granted.

2.  Mary Mauseth

As discussed above, Mauseth cannot be held liable for Laganiere's death unless plaintiff can prove that she was deliberately indifferent to a serious medical need of Laganiere. But nothing in the record would allow a reasonable jury to find that Laganiere was aware of a medical need "that [was] so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Vaughn*, 438 F.3d at 851 (citation and quotations omitted). Hoffman (Laganiere's cellmate) asserts in his affidavit that Laganiere's odd behavior was obvious and that he informed "jail guards" of the need for additional well-being checks. Hoffman Aff. ¶ 4. But Hoffman's vague reference to giving certain information to "Defendants" by talking to "jail guards" is not sufficient to establish that he or anyone else informed *Mauseth* that Laganiere was acting oddly.

Moreover, plaintiff offers no evidence that Mauseth was present when Laganiere exhibited strange behavior — or, for that matter, evidence that Mauseth had *any* contact with Laganiere prior to September 24. Because plaintiff's counsel took no discovery and appears to have done little to develop his client's case, the evidence before the Court establishes only that (1) Mauseth worked in Laganiere's housing unit on the morning of September 24 and (2) Laganiere was asleep and snoring during that time.[5]  Needless to say, a jury could not find

---

[5]Plaintiff does not appear to have any evidence contradicting Mauseth's testimony that she spoke to Laganiere and that Laganiere responded to her question. Hoffman's affidavit does not deny that such a conversation occurred. Moreover, although Hoffman's affidavit does not say so explicitly, it seems likely that he was absent from the cell at certain times that morning — such as during breakfast — and therefore could not know whether Laganiere was asleep the entire morning. The issue is not important, however, because whether Laganiere was asleep the entire morning or instead awoke at some point to respond to a question, he was not exhibiting a need for medical attention.

that Mauseth was deliberately indifferent to a serious medical need of Laganiere based on such scanty evidence.

Even if a reasonable jury could find that Mauseth knew that Laganiere slurred, drooled, and had difficulty walking after taking methadone on a prior occasion, that would not be sufficient to show that she was aware of a serious medical need on *September 24*. As a general matter, signs of intoxication (such as slurring) are not indicative of a serious medical need. *Thompson v. King*, 730 F.3d 742, 748 (8th Cir. 2013). Putting that aside, Hoffman's affidavit does not say *when* Laganiere was acting "out of it," except to say that it was "prior to September 24, 2010." Hoffman Aff. ¶ 3. If, say, Laganiere had been behaving strangely on September 20 — a day on which Mauseth may not have even been working — that would not establish that Mauseth was deliberately indifferent to a serious medical need on September 24.

With little evidence in the record, plaintiff is left arguing that Mauseth should have become concerned about Laganiere's failure to get out of bed and participate in the normal morning routine. But the fact that Laganiere decided to sleep late is hardly evidence that he was suffering from a serious medical need. *See Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (holding that a serious medical need is one that has been diagnosed by a doctor as requiring treatment or that is so obvious that even a layperson would easily recognize the need for treatment). This is particularly true because, as Mauseth was aware, Laganiere did not take methadone that morning. Mauseth therefore had no reason to think that Laganiere was having a an adverse reaction to methadone. *Cf. Grayson v. Ross*, 454 F.3d 802, 810 (8th Cir. 2006) ("Confronted with a calm, non-combative person sitting on a bench answering questions, a layperson would not leap to the conclusion that Grayson needed medical attention, even if he

were aware that Grayson had taken methamphetamine."). Under these circumstances, a reasonable jury could not find that Mauseth was negligent, much less that she exhibited deliberate indifference.

Plaintiff makes much of Mauseth's alleged failure to perform well-being checks on Laganiere every 30 minutes, as required by the ADC policy. As discussed above, though, plaintiff's evidence on this point is equivocal at best. And even if a jury could find that Mauseth did not check on Laganiere every 30 minutes, that would not establish that Mauseth was deliberately indifferent to a serious medical need of Laganiere. Again, there is no evidence that Mauseth was aware that Laganiere *had* a serious medical need, and, even if she was, a violation of a jail policy is not necessarily a violation of the Constitution. *Cf. C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 633 n.10 (8th Cir. 2010) (violations of state law do not state a claim under § 1983). Moreover, there is no evidence that would permit a jury to find that any failure of Mauseth to check on Laganiere every 30 minutes caused his death. Only a medical expert could provide such testimony, but plaintiff did not retain an expert to provide evidence in this case.

Based on the sparse evidentiary record before the Court, no reasonable jury could find that Mauseth was deliberately indifferent to a serious medical need of Laganiere, and thus Mauseth's motion for summary judgment is granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' motion for summary judgment [Docket No. 46] is GRANTED, and all claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  December 12, 2013                         s/Patrick J. Schiltz
                                                  Patrick J. Schiltz
                                                  United States District Judge