# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1088
_____

Patrick Laganiere, Trustee for the heirs and next of kin of Cody Patrick Laganiere, decedent

*Plaintiff - Appellant*

v.

The County of Olmsted; Olmsted County Adult Detention Center

*Defendants - Appellees*

Dr. Molella

*Defendant*

Mary Mauseth; Stacy Sinner

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 6, 2014
Filed: November 24, 2014
_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.
_____

MURPHY, Circuit Judge.

Cody Laganiere, an inmate in the custody of the Olmstead County Adult Detention Center (ADC), was found dead in his cell on September 24, 2010. Subsequent medical evaluations indicated that Laganiere died from a methadone overdose. The trustee of Laganiere's estate sued ADC, Olmstead County, supervisor Stacy Sinner, and detention deputy Mary Mauseth under 42 U.S.C. § 1983 for deliberately disregarding Laganiere's medical needs in violation of the Eighth Amendment. The district court[1] granted summary judgment to ADC and the county and its employees. The trustee appeals the judgment, and we affirm.

On September 17, 2010 Laganiere was prescribed methadone. Inmate Justan Hoffman testified that Laganiere would slur and drool after he took methadone, and he asked "the jail guards to check on" Laganiere given the "changes in [his] behavior." Mary Mauseth, a detention deputy who was assigned to observe Laganiere on September 24, 2010, testified that she checked on him every thirty minutes in order to ensure that he was "behaving or sleeping normally."

Mauseth specifically noted that Laganiere did not wake up for morning headcount that day. At 7:10 a.m. she observed that Laganiere did not leave his cell to take breakfast or his medication. She asked Laganiere if he wanted to do so, and he apparently replied, "no, not today." Mauseth continued to check on Laganiere every thirty minutes and noticed "nothing unusual." At 10:10 a.m. she heard Laganiere snoring in his cell. He was sleeping in the same position when she returned at 10:35 a.m. At that time she called his name several times and received no response. She shook his shoulder and again received no response. Subsequent attempts to revive Laganiere were unsuccessful, and he was pronounced dead. His death certificate states that the immediate cause of death was methadone toxicity and that other contributing conditions included acute pneumonia and major depression.

---

[1] The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

-2-

The trustee brought this action against ADC, Olmstead County, Mauseth, and Sinner, alleging deliberate indifference to Laganiere's medical needs.  The district court granted summary judgment to ADC and the county because the trustee failed to show that a policy or custom caused Laganiere's death.  Without evidence regarding the training or supervision of the detention deputies, the district court granted summary judgment to Sinner as well.  Finally, the district court granted summary judgment to Mauseth because the record did not show that she was deliberately indifferent to Laganiere's medical needs.  The trustee now appeals.

We review the district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. Baye v. Diocese of Rapid City, 630 F.3d 757, 759 (8th Cir. 2011). Summary judgment is proper when there is no genuine dispute of material fact and the prevailing party is entitled to judgment as a matter of law.  Id.

The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs.  Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000).  A plaintiff claiming deliberate indifference must show an objectively serious medical need, and that the "defendant actually knew of, but deliberately disregarded, such need."  McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009).  An objectively serious medical need is one that "has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008).  Deliberate disregard requires "more than negligence, more even than gross negligence," but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." Thompson v. King, 730 F.3d 742, 747 (8th Cir. 2013).  Thus, to be liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

-3-

Here, the trustee contends that Mauseth knew Laganiere suffered serious side effects from methadone but deliberately disregarded the issue. We find no support for this argument in the record. While Hoffman testified that he informed "defendants" of the changes in Laganiere's behavior by asking "the jail guards to check on him," he does not state that he gave the same information to Mauseth. Nor does the trustee show that Mauseth was present when Laganiere "slurred and drooled" after he took methadone, or that Mauseth had contact with Laganiere prior to the day of his death. See Vaughn v. Greene Cnty., 438 F.3d 845, 851 (8th Cir. 2006). Rather, the evidence indicates that on September 24, 2010 Mauseth observed Laganiere asleep in his cell instead of engaged in the morning routine at ADC, and not doing anything which would have caused Mauseth to "recognize the necessity for a doctor's attention." Jones, 512 F.3d at 481–82. Furthermore, even if Mauseth knew Laganiere had suffered serious side effects from methadone, there is no evidence that she deliberately disregarded that risk by failing to "take reasonable measures to abate it." Farmer, 511 U.S. at 847. Mauseth repeatedly checked on Laganiere prior to his death and observed "nothing unusual." Without any evidence that Mauseth "actually knew" Laganiere experienced serious side effects from methadone or that she deliberately disregarded such a risk, she did not violate his Eighth Amendment rights. McRaven, 577 F.3d at 980.

The trustee also argues that Sinner's failure to train Mauseth proves her deliberate indifference to Laganiere's medical needs. We disagree. A supervisor may be held individually liable under § 1983 "if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." Wever v. Lincoln Cnty., 388 F.3d 601, 606 (8th Cir. 2004). The trustee must show that Sinner "was deliberately indifferent to or tacitly authorized the offending acts." Id. Considering the facts before us, the trustee fails to make this showing. The record contains no evidence regarding Sinner's supervision or training of Mauseth. There is also no indication that Sinner knew of any problems with her supervision and training procedures, or that those procedures could cause a constitutional violation.

-4-

See Vaughn, 438 F.3d at 851.  A reasonable jury thus could not find Sinner liable for deliberately disregarding Laganiere's medical needs in violation of § 1983.

Finally, the trustee attempts to hold ADC and the county liable under § 1983 for causing Laganiere's death.  To prevail against these parties, the trustee "must first show that one of the municipality's officers violated [Laganiere's] federal right." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).  This claim therefore fails as well because the trustee has not shown that any officer deliberately disregarded Laganiere's medical needs in violation of the Eighth Amendment.  See Schoelch v. Mitchell, 625 F.3d 1041, 1048 (8th Cir. 2010).

For these reasons, we affirm the judgment of the district court.

_____